## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| STERLING VASHON CRAWFORD, | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-07-2385 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

In this petition for habeas corpus relief under 28 U.S.C. § 2254, Sterling

Vashon Crawford challenges a conviction in the 12th Judicial District Court of

Walker County, Texas.  Respondent filed a motion for summary judgment, (Docket

Entry No. 11), and copies of the state court record.  Crawford has filed his response.

(Docket Entry No. 14).  After consideration of the motion and response, the record,

and applicable authorities, the court grants respondent's motion.  The reasons for this

ruling are stated below.

### I.    Background

A jury found Crawford guilty of the felony offense of murder. (Cause Number

21,362).  On November 13, 2003, the jury sentenced Crawford to thirty-five years

imprisonment.  The First Court of Appeals of Texas affirmed Crawford's conviction

on June 23, 2005.  *Crawford v. State,* No. 01-04-00163-CR, 2005 WL 1474041 (Tex.

App. -- Houston [14th Dist.] 2005, pet. ref'd)(not designated for publication).  The

Texas Court of Criminal Appeals refused Crawford's petition for discretionary review

on December 7, 2005.  Crawford filed an application for state habeas corpus relief on

February 23, 2007, which the Texas Court of Criminal Appeals denied without

written order on July 11, 2007.  *Ex parte Crawford,* Application No. 67,817-01 at

cover.

On July 19, 2007, this court received Crawford's federal petition.  Crawford

contends that his conviction is void for the following reasons:

(1)     There was no evidence to support his conviction for murder.

(2)     Trial counsel rendered ineffective assistance by:

        A. failing to object to an all white jury and to the prosecutor's cousin serving

        on the jury; and

        B. failing to move for a mistrial.

(3)     The trial court abused its discretion by:

        A. allowing the District Attorney's cousin to serve on the jury;

        B. allowing inadmissible hearsay over Crawford's objection;

        and

        C. allowing a lay person to give expert testimony.

(4)    He was denied an impartial jury because the investigator spoke with the jury during their deliberations.

(5)    The prosecutor engaged in misconduct by:

A. presenting inadmissible hearsay as evidence;

B. commenting on Crawford's failure to testify; and

C. failing to disclose exculpatory evidence.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-8A).

## II.    The Applicable Legal Standards

This court reviews Crawford's petition for writ of habeas corpus under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996  28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).

Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the evidence through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986).  The court must look "through the prism of AEDPA deference." *Ward v. Dretke*, 420 F.3d 479, 499 (5th Cir. 2005).

The AEDPA provides as follows, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal

law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 435 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000). Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

Pure questions of fact are governed by § 2254(d)(2). *Martin v. Cain,* 246 F.3d 471, 475 (5th Cir. 2001). In addition, a state court's factual findings are entitled to

deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). The petitioner's claims for relief are examined below under the applicable legal standard.

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of

fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Crawford is a *pro se* petitioner.  In this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  This court accords Crawford's state and federal habeas petitions a broad interpretation. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.  Statement of Facts

On December 15, 2001, a group of hunters found the body of a black male, later identified as the Complainant, lying beside Teamer Road in the western part of Walker County, Texas. (Reporter's Record, Vol. X, p. 9; Vol. V, p. 114).  The Walker County Sheriff's Department responded to the scene led by Sergeant Steve Fisher and Detective Jay Meadors.  An investigation of the scene suggested that the male had possibly been shot and set on fire. (Reporter's Record, Vol. X, p. 11). Texas Ranger Sergeant Bryant Wells assisted with the investigation.  At the scene, investigators took photographs of the body and tire tracks; took measurements of the distances between the body, a pool of blood, and tire tracks; and made castings

of tire impressions left in the dirt roadway. (Reporter's Record, Vol. XI, p. 28). The body was collected by a local funeral home and taken to the Southwest Forensic Institute in Dallas for an autopsy to determine cause of death and identity.

On December 16, 2001, LaTarsha Gamble, the wife of Keiderick Dewayne Gamble ("the Complainant"), contacted the Walker County Sheriff's Department to report the Complainant missing. The Complainant's mother testified that the Complainant had a large scar on the chest due to a heart surgery as a child. The unidentified body had a similar scar on the chest.

On Monday, December 18, 2001, the medical examiner informed the Walker County Sheriff's Department that the unidentified male was Keiderick Gamble based on a match of fingerprints taken from the body to fingerprints on file with the Department of Public Safety. The medical examiner reported that the Complainant died as a result of two gunshot wounds, one to the neck at a slightly downward angle from left to right and one in the back that was a straight shot exiting through the chest area. (Reporter's Record, Vol. VIII, p. 19). The medical examiner testified that the track of the bullet wound to the head was consistent with someone taller than the Complainant shooting downward. (*Id.* at 17). Crawford was six feet five inches tall, (Reporter's Record, Vol XII, p. 80), and the Complainant was five feet six inches.

Officers learned that the Complainant had two residences located in Huntsville, Texas. (Reporter's Record, Vol. X, p. 21). First, the Complainant shared a home on Vicki Lane with his wife, LaTarsha Gamble, and their children. (Reporter's Record, Vol. VI, p. 82). The Complainant also maintained a residence at the Chateau II Condominium complex that was leased in the name of Deborah Kinney, who was his girlfriend and drug supplier. (Reporter's Record, Vol. V, p. 31). This residence was referred to as the "Hot Spot."

LaTarsha Gamble reported that the Complainant received a phone call in the early morning hours of Friday, December 14, 2001 at the home on Vicki Lane. Ms. Gamble reported that she recognized the voice on the phone as that of Sterling Crawford. (Reporter's Record, Vol. IV, p. 137). The Complainant left his residence and indicated that he was going to the "Hot Spot." (Reporter's Record, Vol. V, p. 12).

Kinney reported that on December 14, 2001, the Complainant called her and told her that he was going to Sterling Crawford's residence and to call him back in thirty minutes. (Reporter's Record, Vol. V, p. 112). Kinney reported that he called her thirty minutes later and, speaking in hushed tones, he told her, "I'm where I told you I was goin' to be." (Reporter's Record, Vol. V, p. 113). Kinney reported to officers that she had last seen the Complainant on December 13, 2001, when she

O:\RAO\VDG\200707-1385.d01

10

and the Complainant went to purchase a cell phone.   She stated that the Complainant used two cell phones. (Reporter's Record, Vol. V, pp. 95-96). Neither LaTarsha Gamble nor Deborah Kinney ever talked to the Complainant again.

Several months before his death, the Complainant asked Bernard Willis, the Complainant's close friend, what kind of person Sterling Crawford was. The Complainant told Willis that he had previously met with Crawford at a Shell Station and that Crawford wanted to purchase three kilos of cocaine. (Reporter's Record, Vol. VIII, p. 53).   The Complainant later told Willis that he had acquired the three kilos to sell to Crawford. (Reporter's Record, Vol. VIII, p. 58).   The Complainant was apprehensive about the drug deal with Crawford and asked Willis if he could leave the drugs with him for Crawford to pick up.   (Reporter's Record, Vol. VIII, p. 59). Willis said he had a prior engagement and could not help the Complainant.   At that point, the Complainant said he would go through with the deal.   Willis testified that on Sunday, December 16, 2001, Crawford called and said that he had given the Complainant $24,000 for some drugs, and that the Complainant had not delivered them. Crawford said that he hoped the Complainant was okay.   (*Id.* at 64-65).

On December 18, 2001, Sterling Crawford voluntarily gave a statement to investigators that indicated that he did not know the Complainant and had only spoken to him on one occasion before about some tire rims. (Reporter's Record, Vol. XVII, pp. 5-7, 17). Crawford also told officers that he lived at 21 Pine Breeze, Huntsville, Texas. (Reporter's Record, Vol. VII, pp. 14, 25).   Crawford actually resided at a second residence on Ross McBride Road. Crawford also told investigators that he was at home alone at the time of the Complainant's death. Crawford relied on Sheryl Parker for his alibi. Crawford reported that he left his home on Friday evening with his cousin Bubba and met Parker at a local gas station. (Reporter's Record, Vol. VII, p. 27).  He stated that he traveled with her in her vehicle to Houston and did not return to Huntsville until Sunday. (Reporter's Record, Vol. VII, p. 28). Parker testified that Crawford called her on Friday evening, December 14, 2001, and asked her to help him take his truck to a friend who lived in Houston. (*Id.* at 153).  She did travel to Houston with Crawford, but he drove his truck to Houston. Parker also testified that she brought Sterling Crawford back to Huntsville in the early morning hours of Saturday morning and dropped him off at his house but did not go inside. (Reporter's Record, Vol. VII, p. 155).  Parker then met Crawford again late Sunday and returned to Houston where

she traveled with him on Monday to Discount Tire to have the tires on his King Ranch Ford truck changed. (Reporter's Record, Vol. VII, p. 160).

Investigators learned that Sterling Crawford had a residence on Ross McBride Road, in addition to the home on Pine Breeze. (Reporter's Record, Vol. X, pp. 35-36). Ranger Wells observed burning carpet in the yard at that location. Fearing that evidence was being destroyed, Ranger Wells along with investigators from the Sheriff's Department sought and obtained a search warrant for Crawford's residence on Ross McBride Road in Walker County, Texas on December 28, 2001. (Reporter's Record, Vol. XI, pp. 80, 81).

The Texas Department of Public Safety Crime Scene Team searched Crawford's home and found three small drops of blood on the wall of that house. (Reporter's Record, Vol. XI, p. 7). Those drops of blood were compared with a known sample from the Complainant in the case and were identified as the blood of the Complainant. (Reporter's Record, Vol. XVIII, pp. 60, 61). Investigators found blood in the following locations in Crawford's home: on the base board in the living room where the photograph was hung; on the right wall near where the carpet had been replaced; directly across from the living room; and on the door frame. The Crime Team also located a hole in the wall covered by a recently moved picture. Investigators found wet putty that had been used to cover a hole.

12

The hole was consistent with that of a bullet and was left to right at a slight downward angle. (Reporter's Record, Vol. XI, pp. 94, 95). The Crime Team also located a second hole in the floor of the residence in the hallway area near the front door and near the location of the three drops of blood. (Reporter's Record, Vol. XI, pp. 96, 97)  The carpet had been removed from the hallway and the hallway was freshly painted.

In the carport, investigators found tire tracks that did not match any of the vehicles at Crawford's home on Ross McBride Road.  (Reporter's Record, Vol. XI, pp. 112-14). The tread pattern matched the tracks found at the crime scene on Teamer Road.   In the front yard, there was a pile of burning carpet.  The Crime Team located two burned cell phones in the fire with the carpet. (Reporter's Record, Vol. XI, pp. 110, 111). The criminalist who examined the phones determined that one of the circuit boards recovered from the fire was consistent with a Nokia 4800 series phone that was the same as one of the two phones that the Complainant was known to carry. (Reporter's Record, Vol. XVI, p. 99).

Based on a traffic ticket located during the search, investigators were able to locate a King Ranch Ford truck that Sterling Crawford drove on a regular basis at a location in Houston, Texas. (Reporter's Record, Vol. XI, p. 124).  The truck had been detailed inside and out, including the undercarriage. (Reporter's Record, Vol.

XI, p. 125). The brand new Toyo tires on that truck did not match the impressions left at the scene where the Complainant's body was found. (Reporter's Record, Vol. XI, p. 126).

Investigators obtained consent to search the truck from the registered owner, Katrina Bey. (Reporter's Record, Vol. XI, p. 128). Inside the truck, investigators found a receipt from Discount Tire Company for four Toyo tires that had recently been put on the Ford truck. (Reporter's Record, Vol. XI, p. 128). Officers went to the Discount Tire location and were able to retrieve the four tires that had been removed from the Ford truck on Monday, December 17, 2001 following the death of the Complainant on Friday, December 14, 2001. (Reporter's Record, Vol. XI, p. 133). The tires were 22-inch Nitto 404 Extreme tires which were rare at the time and not available for many vehicles. Lamar Lightfoot, a friend of Crawford, stated that he went with Crawford to Discount Tire where Crawford paid $1,700 cash for four new tires and was supposed to return to Discount Tire to retrieve the four Nitto tires taken off the truck. (Reporter's Record, Vol. XVI, p. 15). Lightfoot also stated that Crawford did not care what brand of tire he bought as long as it was not a Nitto 404 Extreme. (*Id.* at 11). The tires were submitted to the DPS crime lab where a criminalist made impressions of the tires using ink. (Reporter's Record, Vol. XVI, p. 50). The criminalist was able to say that the tire tracks left at the

scene of the Complainant's body were made by a Nitto 404 Extreme tire due to the extremely unique tread pattern of the tire. (Reporter's Record, Vol. X, pp. 33, 34); (Reporter's Record, Vol. XVI, p. 156).  Ranger Wells was able to determine that the drops of blood located in the middle of the road at the scene of the body were consistent with the location of weep holes in the bed of a Ford truck if the truck were backed up to dump a body. (Reporter's Record, Vol. XI, pp. 40, 41).  On December 18, 2001, Crawford placed an order for a new spray-in bed liner for his F-150 truck.  (Reporter's Record, Vol. XIV, p. 104).

## IV.   The Claims Based on Sufficiency of the Evidence

Crawford asserts that the evidence was insufficient to support his conviction for murder.  He claims that the State did not establish requisite elements as defined by V.T.C.A. Penal Code § 19.02.  Respondent argues that because Crawford failed to raise this claim in his petition for discretionary review to the Texas Court of Criminal Appeals, this claim is procedurally barred from federal habeas corpus review.  Respondent explains that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default.  Respondent further asserts that challenges to the sufficiency of the evidence are not cognizable in a post-conviction writ of habeas corpus, and the denial of Crawford's state application by

the Texas Court of Criminal Appeals was a decision by that Court that Crawford's sufficiency-of-evidence claims are not cognizable in state habeas proceedings. Respondent maintains that though the trial court did not expressly apply a procedural bar to Crawford's claim, the denial of Crawford's claim was based upon an adequate and independent state procedural rule, and his claim is procedurally barred. (Docket Entry No. 11, Respondent's Motion for Summary Judgment, p. 9). Crawford stated that he wished to dismiss his challenge to the sufficiency of the evidence because it was procedurally barred. (Docket Entry 14, Petitioner's Response, p. 5).

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court elaborated on the "independent and adequate" state law doctrine, which aids federal courts in determining when to exercise habeas review. The Court held:

> In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state law ground, a federal court may address the petition.

*Id.* at 735.

In *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), the Supreme Court clarified *Coleman* and addressed the problem that arises when a state court issues an

unexplained order, neither disclosing nor insinuating the reason for its judgment. The Court created a presumption to be applied by federal courts when they are unable to determine whether the state court opinion "fairly appeared to rest primarily upon federal law." *See id.* at 803 (quoting *Coleman*, 501 U.S. at 740).

Termed the "look through" doctrine, this presumption enables federal courts to ignore-and hence, look through-an unexplained state court denial and evaluate the last reasoned state court decision. When one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment. The Court explained:

> The maxim is that silence implies consent, not the opposite - and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below. The essence of unexplained orders is that they say nothing. We think that presumption which gives them no effect - which simply "looks through" them to the last reasoned decision - most nearly reflects the role they are ordinarily intended to play.

*Id.* at 804.

In *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999), the Fifth Circuit considered whether the Court of Criminal Appeals clearly and expressly dismissed Bledsue's claim on an "independent and adequate" state procedural ground, such

that the claim was procedurally barred in federal court, when it denied his application "without written order."   In response to Bledsue's second habeas petition, the Texas Court of Criminal Appeals simply stated, "Application denied without written order." Relying on *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994), the state argued, as it does in this case, that this denial stemmed from the longstanding Texas procedural rule that prohibited the Court of Criminal Appeals from entertaining sufficiency of the evidence claims on habeas review.

In rejecting this argument, the Fifth Circuit reasoned:

> The state's reliance on *Renz* is misplaced. There, the state habeas trial court refused to reach the sufficiency of the evidence claim explicitly based on a state procedural rule, and the Court of Criminal Appeals denied relief "on the findings of the trial court." *Renz*, 28 F.3d at 432. The state habeas trial court plainly denied Bledsue's second petition on the merits, and the Court of Criminal Appeals denied the petition "without written order." We find these two results inapposite and glean no support for the state's position.
>
> Although the Court of Criminal Appeals generally refuses to entertain sufficiency challenges on collateral review, the mere existence of a procedural default does not deprive federal courts of jurisdiction. *See Shaw v. Collins*, 5 F.3d 128, 131 (5th Cir. 1993). Quite to the contrary, to prohibit our collateral review the state court must have expressly relied on the procedural bar as the basis for disposing of the case. Here, the disposition by the Court of Criminal Appeals presented no such expression and no explanation, so we cannot identify the

element of clear and express reliance on a state procedural rule to preclude review in federal court.

Indeed, the Court of Criminal Appeals has explained that "'[i]n our writ jurisprudence, a "denial" signifies that we addressed and rejected the merits of a particular claim while "dismissal" means that we declined to consider the claim for reasons unrelated to the claim's merits.'" FN13 Here, that court "denied" the habeas application, thereby signifying its rejection of the merits - albeit for no additional reasons, but certainly not expressly on the basis of an independent and adequate state procedural ground. Under *Coleman*, we must treat this "denial" as a merits adjudication of Bledsue's state habeas petition that raised the same constitutional challenge to the sufficiency of the evidence as he raised in the district court and as he brings to us today.

Additionally, under *Ylst*, we must "look through" the Texas court's denial to the ruling of the last state court to render a reasoned decision. When we do so, we find that the state court denied Bledsue's requests not on a procedural ground but on the merits.

The intermediate state court of appeals, on direct review, conducted a sufficiency of the evidence examination in which it noted that "we must review all of the evidence in the light most favorable to the verdict." Although that court ultimately found the evidence sufficient to establish guilt, it nevertheless performed an analysis on the merits to reach that finding. As we "look through" the denial by the Court of Criminal Appeals to the reasoned intermediate appellate opinion, we again conclude that Bledsue's claim was denied on the merits, i.e., was not denied on an independent and adequate state ground. We therefore conclude that the sufficiency of the evidence

> claim does not fall prey to the procedural bar and is
> properly before the federal courts.

*Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

The Fifth Circuit rejected the respondent's argument that a claim was procedurally barred even though the Texas Court of Criminal Appeals did not expressly rely on an independent and adequate state ground. Based on the reasoning of the *Bledsue* Court, this court determines that Crawford's claim based on the insufficiency of the evidence is not procedurally barred. Though Crawford had moved to dismiss this claim, it appears that Crawford was relying on respondent's mistaken contention that the claim was procedurally-barred. Because the claim is not procedurally-barred, the court will, in the interest of justice and liberal construction of *pro se* pleadings, address the merits of this claim.

Crawford complains that the State had attempted to connect Crawford with the murder through a tire track found near the Complainant on an adjacent dirt road. Crawford asserts that the State's expert witness offered testimony concerning a comparative analysis conducted in an attempt to prove that a tire track found near the Complainant matched that of Crawford's vehicle. Crawford argues that the expert testimony showed that the tire track did not match Crawford's vehicle. Crawford argues that the State's expert testified that he had conducted

many such analyses and that he had never been able to say conclusively that a tire track found matched a certain tread mark.  Crawford maintains that there were no similarities between his tires and the impressions found near the Complainant's body.  The only thing to show a connection between Crawford's truck and the tracks was the officer's testimony that they appeared to be similar to his.  Crawford notes that the State further attempted to make a connection between Crawford and the alleged offense by focusing on a hole in the wall of Crawford's home.  An expert witness testified that the hole in the wall could have been made from a projectile, but that he did not find a projectile or any particular residue to confirm it.  The expert also testified that there was no direct evidence to show whether or not a crime had occurred at Crawford's home.  Another expert witness from the Texas Department of Public Safety testified that the Complainant's prints were not found anywhere in Crawford's home.  A blood spatter expert testified that he could not do a sufficient blood spatter analysis because there was so little blood at the scene.  Another State's expert witness testified that he could not tell, how, when or how long the blood spatters had been at the scene or who had caused them to be there.  Based on this testimony, Crawford argues that there was no evidence to connect him to the offense.

Crawford challenges the legal and factual sufficiency of the evidence introduced at his trial. In reviewing legal sufficiency, Texas and federal courts view the evidence in the light most favorable to the verdict and ask whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Under Texas law, intermediate appellate courts have the authority to review fact questions in criminal cases. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). This "factual sufficiency" review of the evidence is broader than a "legal sufficiency" challenge under *Jackson v. Virginia*, 443 U.S. 307 (1979). *Id.* Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* The power of state appellate courts to review the factual sufficiency of the evidence derives from Texas statutory and constitutional authority. *Id.* at 129-30; *Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994). However, while Texas has permitted factual sufficiency reviews, under authority derived from Texas law, there is no corresponding federal right to such reviews under the United States

Constitution.   Under settled Fifth Circuit authority, a state may impose a more exacting standard for determining the sufficiency of the evidence, but challenges to state convictions under § 2254 need only satisfy the *Jackson* standard. *West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996); *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990); *Jones v. Butler*, 864 F.2d 348, 361 (5th Cir. 1988). Crawford's claim attacking the factual sufficiency of the evidence is not cognizable in federal habeas proceedings.

A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

Crawford's claim that the evidence was legally insufficient lacks merit.   A federal habeas corpus court reviews the evidentiary sufficiency of a state court conviction under the legal standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979).   This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.   In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must

consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott,* 55 F.3d 1059, 1061 (5th Cir. 1995). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, as long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson,* 126 F.3d 662, 664 (5th Cir. 1997). To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Jackson,* 443 U.S. at 324 n.16; *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000), *cert. denied,* 121 S. Ct. 885 (2001). Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir.), *cert. denied,* 498 U.S. 903 (1990). A federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts. *Marler v. Blackburn,* 777 F.2d 1007, 1012 (5th Cir. 1985). All credibility choices must be resolved in favor of the jury's verdict. *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994). Credibility issues are for the finder of fact and do not undermine the sufficiency of the evidence. *United States v. Morgan,* 117 F.3d 849, 854 n.2 (5th Cir.), *cert. denied,* 118 S. Ct. 641 (1997). "Where a state appellate court has conducted a thoughtful review of the evidence,

moreover, its determination is entitled to great deference." *Callins v. Collins*, 998

F.2d 269, 276 (5th Cir. 1993)(citation omitted).

Crawford raised this issue on appeal, and that court found:

### B. Factual and legal sufficiency

In his ninth and tenth points of error, appellant challenges the legal and factual sufficiency of the evidence. In reviewing legal sufficiency, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89 (1979); *King v. State,* 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In a factual sufficiency review, we view all the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex. Crim. App. 2004), *cert. denied,* __ U.S. __, 125 S.Ct. 1697 (2005); *see also Zuniga v. State,* 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). We should not substitute our own judgment for that of the fact finder. *Jones v. State,* 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State,* 125 S.W.3d 661, 671 (Tex. App. - Houston [1st Dist.] 2003, pet. ref'd). The jury may believe all, some, or none of any witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *Cain v. State,* 958 S.W.2d 404, 410 (Tex. Crim. App. 1997). The testimony

of LaTarsha and Kinney and evidence of numerous phone calls between appellant and Gamble before the murder supports a conclusion that appellant and Gamble planned to meet, and did meet, at appellant's residence on the day of the murder. The physical evidence at appellant's residence included Gamble's blood and holes in the wall and floor that were consistent not only with bullet holes, but also with unchallenged testimony establishing the trajectory of the bullets that caused Gamble's gunshot wounds and death. This evidence also supports a finding that Gamble was present at appellant's residence and additionally supports a finding that Gamble was shot to death while at appellant's residence. The jury also had before it unchallenged testimony about the destruction of carpet from the hallway of appellant's residence, testimony that the hallway was freshly painted, testimony that a picture had been hung over the hole in the wall of appellant's residence near where Gamble's blood was found, and testimony regarding the destroyed cell phones. Finally, unchallenged testimony that Nitto 404 Extreme tire tracks were observed at the location where Gamble's body was found, together with unchallenged testimony that appellant removed, on the next business day after the murder, that brand of tires from a vehicle he regularly drove, supports a finding placing appellant at the location where Gamble's body was discovered. Viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found, beyond a reasonable doubt, that appellant was guilty of murder as charged. Viewing all the evidence in a neutral light, we hold that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust, nor is the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met. We overrule appellant's ninth and tenth points of error.

*Crawford v. State,* No. 01-04-00163-CR, 2005 WL 1474041 (Tex. App. -- Houston [14th Dist.] 2005, pet. ref'd)(not designated for publication).

The Texas Court of Criminal Appeals refused Crawford's petition for discretionary review on December 7, 2005.

These facts are legally sufficient to show that Crawford murdered Gamble on December 14, 2001. The evidence was sufficient to support Crawford's conviction for murder.

Crawford is not entitled to habeas relief on his sufficiency-of-the-evidence claim. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994).

## V.     The Claim Based on Juror Misconduct

Crawford alleges jury misconduct because there were two investigators in the jury room during the jury's deliberations. The Sixth Amendment to the federal Constitution requires, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. "Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decision maker.... The Supreme Court has unfailingly protected the jury room from

juror bias in a variety of contexts . . . , and this is consistent with the Court's long-held view that the impartial jury is critical in determining guilt and punishment." *Virgil v. Dretke*, 446 F.3d 598, 605 (5th Cir. 2006). In determining whether a venireman exhibited actual bias during voir dire questioning, the Court considers the venireman's answer in context with the initial question asked as well as with the subsequent modifications. *Id.* at 608. A federal court must initially presume that a jury was impartial. *De La Rosa v. Texas*, 743 F.2d 299, 306 (5th Cir. 1984), *cert. denied*, 470 U.S. 1065 (1985). However, a presumption of prejudice arises when an outside influence on the jury, such as evidence that was not admitted before the jury, is brought to the attention of the trial court, which the government must rebut by proving the harmlessness of the breach. *Drew v. Collins*, 964 F.2d 411, 415 (5th Cir. 1992), *cert. denied*, 509 U.S. 925 (1993).

Crawford has not shown that the state court's determination was an unreasonable application of federal law. Since Crawford has not shown that the jurors had any contact with an outside influence, he cannot avail himself of the presumption of prejudice. Therefore, Crawford must demonstrate that any jury misconduct that took place deprived him of a fair and impartial trial. He has failed to do so. The jury also was polled after the verdict confirming their unanimous decision. Crawford does not present evidence to support his allegation of

prejudice.  As such, he fails to show a constitutional violation on this ground. Crawford's claim that two investigators had contact with the jury during their deliberations is entirely conclusory.

Crawford is not entitled to habeas corpus relief on this claim.

## VI.   The Claim of Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate

assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 690. Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. *Id.*

Crawford asserts that trial counsel rendered ineffective assistance at trial in several respects. The state habeas court denied relief on this claim, and the Texas Court of Criminal Appeals denied Crawford's application without written order. *Ex*

*parte Crawford,* Application No. 67,817-01 at cover.   Each of the areas Crawford alleges as ineffective assistance is examined below.

**1.     Failure to Object to an All-White Jury**

Crawford first asserts there was no way in which he could have received a fair trial by an all-white jury in Huntsville, Texas. He claims that there were sufficient minorities from which to choose the jury pool, but the prosecution sought to strike all minorities from the jury.  Crawford asserts that counsel failed to object to the prosecution's actions even after the prosecution's motives became evident.   Crawford notes that counsel filed a *Batson* motion challenging the empaneling of an all-white jury, which the trial court ultimately denied.  Crawford complains that counsel failed to pursue the denial of the motion by the court by entering objections to the all-white jury.   (Docket Entry No. 1, Petitioner's Memorandum, p. 8).

The Due Process Clause of the Fifth Amendment prohibits race-based use of peremptory strikes.  *Batson v. Kentucky,* 476 U.S. 79, 84 (1986).   The party challenging a strike bears the burden of persuasion to show that it was purposefully discriminatory.  A *prima facie* showing that the strike was racially motivated is the first step.  *United States v. Davis,* 393 F.3d 540, 544 (5th Cir. 2004).  If the *prima facie* showing is made, the burden shifts to the party making the strike to articulate

a race-neutral justification. *Id.* The trial court must determine whether the party making the challenge has carried its burden of proving purposeful discrimination. *Id.*

Respondent argues that there is nothing in the record to substantiate Crawford's claim that he was tried by an all-white jury. However, in his closing argument, counsel did indicate that the jury consisted of all white jurors. (Reporter's Record, Vol. IX, p. 77). He expressed his belief that the jury would consider the evidence without respect to race. (*Id.* at 77-78). The record shows that trial counsel, Parras, made a *Batson* challenge to the dismissal of juror number 6, Mr. Chambers. (Reporter's Record, Vol. III, p. 164). The prosecutor responded that Mr. Chambers was the most verbal member of the venire, but that he seemed to waiver on many issues. The prosecutor further stated that Mr. Chambers expressed some doubt as to whether twelve people could reach a verdict. (*Id.*). Trial counsel stated that he had no argument against the prosecutor, and the trial court overruled the *Batson* objection. (*Id.*). The record is silent as to the race or ethnicity of those venire members stricken by the State. Crawford's claim that he was tried by an all-white jury because the State exercised its peremptory strikes to eliminate jurors of other ethnicities, is also conclusory. Crawford has not shown that there were additional instances where counsel could have made a *Batson*

Case 4:07-cv-02385   Document 16   Filed in TXSD on 03/03/09   Page 33 of 45

objection. Crawford does not specify other instances where counsel should have requested a *Batson* hearing to object to any of the State's peremptory challenges. Nothing in the record supports Crawford's allegation that any particular juror was improperly struck. The record provides no basis for an inference of purposeful discrimination. Crawford's conclusory allegation is not supported by the record.

In a related claim, Crawford asserts that members of his racial group, African-Americans, were intentionally excluded from the jury pool. Counsel raised an alternate *Batson* objection, which the Court denied. Crawford contends that the process used for selecting grand jurors in Walker County resulted in an underrepresentation of African-Americans on grand juries in that county, and that this underrepresentation violated his constitutional rights under both the Fourteenth Amendment's Equal Protection Clause and the Sixth Amendment's "fair cross-section" requirement.

The Supreme Court has clearly and consistently stated that indictment by a grand jury from which members of a racial group purposefully have been excluded violates equal protection principles. *See, e.g., Rose v. Mitchell*, 443 U.S. 545, 556 (1979); *Castaneda v. Partida*, 430 U.S. 482 (1977). In order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial

O:\RAO\VDG\2007\07-2385.dt 1 8/1/03 11:33 am

33

underrepresentation of the members of a race or another identifiable group. *See Mitchell*, 443 U.S. at 565; *Partida*, 430 U.S. at 494. The test for determining whether this standard has been satisfied has four components: (1) the petitioner must establish the excluded group is a recognizable, distinct class, singled out for different treatment under state law, as written or as applied; (2) the degree of underrepresentation must be proved by comparing the population of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time; (3) there must be a selection procedure that is susceptible of abuse or is not racially neutral to support the presumption of discrimination raised by the statistical showing; and (4) once the petitioner establishes the foregoing *prima facie* case, the burden shifts to the State to rebut the *prima facie* case. *Mitchell*, 443 U.S. at 565; *Partida*, 430 U.S. at 494-95.

Crawford failed to satisfy any of the three elements required to establish a *prima facie* case. Specifically, Crawford did not present evidence indicating that African-Americans in Walker County had been singled out for different treatment by state law as written or applied, that African-Americans were underrepresented in the grand jury pool over a significant period of time, or that Walker County employed a selection procedure that is susceptible of abuse or is not racially neutral.

Crawford has not established constitutionally deficient performance by counsel or actual prejudice as a result of counsel's deficient performance.

## 2.    Failure to Object to a Biased juror

Crawford next faults counsel for failing to object to the prosecutor's cousin serving on the jury.  Crawford complains that the prosecutor chose a family member to serve as a juror.  He asserts that the prosecutor chose his family member so he would vote to convict Crawford and sway other jurors to convict.  Crawford complains that he was denied a trial by an impartial jury.  (Docket Entry No. 1, Petitioner's Memorandum, pp. 11-12).

During voir dire, the following exchange took place concerning the relationship between juror McGinnis and Assistant District Attorney Jack Choate:

> MR. CHOATE: Mr. McGinnis, he indicated he's a cousin.
>
> BY THE COURT: Mr. McGinnis, yes, sir they wanted to ask you something.
>
> MR. PARRAS: I think from your questionnaire you said you are a cousin of Jack Choate?
>
> VENIREPERSON: Yes.
>
> MR. PARRAS: Is there anything about your relationship with Jack that would influence how you serve as a juror?

VENIREPERSON: Yes.

MR. PARRAS: Could you put your relationship with him aside and judge the evidence as it comes through other witnesses?

VENIREPERSON: Yes.

MR. PARRAS: If he's – and I don't know now if Mr. Choate is going to be involved in questioning witnesses or not. If he is, are you going to give him credibility or believe what he says as opposed to what the witness said?

VENIREPERSON: No, I'll listen to all sides.

MR. PARRAS: Okay, thank you very much.

(Reporter's Record, Vol. III, p. 126).

Article 35.16 of the Texas Code of Criminal Procedure permits challenges for cause to the parties in a criminal prosecution under certain, specified circumstances. Either party may challenge a prospective juror for cause, for example, if "the juror has a bias or prejudice in favor of or against the defendant[.]" Crawford made no showing in this case that venireperson McGinnis was actually biased against him. Any bias on his part would therefore have to be presumed by virtue of his relation to the prosecuting entity. Article 35.16 does recognize some categories of presumed or implied bias as a basis for a challenge for cause. For instance, the defense may challenge a prospective juror for cause who "is related

within the third degree of consanguinity or affinity ... to any prosecutor in the case [.]" Whether a person is related to a district attorney within the third degree of consanguinity is determinable by application of section 573.023 of the Texas Government Code. TEX. GOV'T CODE ANN. § 573.023 (Vernon 1994); *see* TEX. CODE CRIM. PROC. ANN. art. 35.16(c); *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002). In *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002), the Texas Court of Criminal Appeals noted that by law, cousins are not related within the third degree of consanguinity. *Id.* at 56; *see also* TEX. GOV'T CODE ANN. § 573.023(c) (Vernon 2004) (defining such relationships as those of parent and child, siblings, grandparent and grandchild, great-grandparent and great-grandchild, and aunts or uncles and nieces or nephews; list does not include cousins). Section 573.023 "specifies the manner of computing the degree of consanguinity between two persons and explicitly names the relationships which fall within the third degree; a cousin is not included among such relatives." *Ex parte Fierro*, 79 S.W.3d at 56. Venireperson McGinnis indicated that he was Mr. Choate's cousin. This court finds that venireperson McGinnis was not challengeable for cause under section 35.16(c) because he was not related to Mr. Choate within the third degree of consanguinity. Thus, Crawford's ineffective

assistance of counsel claim based on counsel's decision not to challenge for cause venireperson McGinnis under article 35.16(c) is without merit.

Crawford has not established constitutionally deficient performance by counsel or actual prejudice as a result of counsel's deficient performance.

### 3.    Failure to Object to Jury Tampering

Crawford next asserts that the trial judge was forced to admonish two investigators in the case at bar to stay out of the jury room where the jurors were deliberating.  Crawford complains that counsel was ineffective for refusing to move for a mistrial or filing a motion for directed verdict or motion for new trial. The court has reviewed the record relating to jury deliberations in the guilt-innocence phase which began on November 7, 2003. (Reporter's Record, Vol. XIX, p. 100).  The jury reached a verdict on November 10, 2003.  (Reporter's Record, Vol. XX, pp. 5-6).  There is nothing on the record indicating that the trial court admonished anyone about entering the jury room.  As noted, Crawford complains that counsel failed to file a motion for directed verdict or motion for new trial.  After the jury returned its verdict, counsel renewed his motion for directed verdict and judgment notwithstanding the verdict. (Reporter's Record, Vol. XX, pp. 8-9).  Crawford has not established constitutionally deficient performance by counsel or actual prejudice as a result of counsel's deficient

performance.   Crawford has failed to show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Crawford is not entitled to habeas corpus relief on this claim.

## VII.   The Claim Based on Trial Court Error

Crawford asserts that the trial court's errors rendered the proceedings against him unfair.   When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious as to render the entire trial fundamentally unfair. *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied,* 508 U.S. 978 (1993).   "A state court's evidentiary ruling presents a cognizable habeas claim only if it runs afoul of a specific constitutional right or renders the trial fundamentally unfair." *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994), *cert. denied,* 513 U.S. 1163 (1995).   The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire case. *Jernigan v. Collins*, 980 F.2d at 298; *Bridge v. Lynaugh,* 838 F.2d at 772; *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir.), *cert. denied,* 484 U.S. 842 (1987).   The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *See*

*Guidroz v. Lynaugh,* 852 F.2d 832, 835 (5th Cir. 1988); *Rogers v. Lynaugh,* 848 F.2d 606, 609 (5th Cir. 1988).  The court considers Crawford's claims of trial court error.

### 1.     Failure to Object to Biased Juror

In his first claim of trial court error, Crawford asserts that by allowing the prosecutor's cousin to serve on the jury panel, the trial court abused it's discretion. Crawford complains that he was denied a fair trial because the judge obviously had pre-determined Crawford's guilt.

As discussed above, Juror McGinnis indicated that he was a cousin of Mr. Choate, one of the three prosecutors who represented the State of Texas. A cousin is not within the third degree of consanguinity.  The trial court did not err in allowing Juror McGinnis to serve because he was not related to Mr. Choate within the third degree of consanguinity.  Crawford has not shown that this purported trial court error resulted in actual prejudice.

Crawford is not entitled to habeas corpus relief on this claim.

### 2.     Improper Admission of Hearsay Testimony

Crawford alleges that the trial court abused its discretion by admitting hearsay testimony into evidence over the defense's objection. (Docket Entry No. 1, Petitioner's Memorandum, pp. 18-22).

A criminal defendant has the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI.  Hearsay is an out-of-court statement offered at trial to prove the truth of the matter asserted. TEX. R. EVID. 801(d) (Vernon 2003).  Hearsay is not admissible absent an exception. TEX. R. EVID. 802 (Vernon 2003).

A court's "admission of hearsay evidence against a defendant implicates the Sixth Amendment's Confrontation Clause because the defendant is not afforded an opportunity to confront the out-of-court declarant." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.) (citing *Ohio v. Roberts*, 448 U.S. 56, 63 (1980)), *cert. denied* 126 S. Ct. 51 (2005).  The Supreme Court has held that "a hearsay statement against a defendant may be introduced if the statement bears sufficient 'indicia of reliability.'" *Id.* (quoting *Ohio v. Roberts*, 448 U.S. at 66).  In order to show indicia of reliability, it must be shown that the statement either "falls within a 'firmly rooted' hearsay exception," or that the statement "is supported by 'particularized guarantees of trustworthiness.'" *Id.* (quoting *Idaho v. Wright*, 497 U.S. 805, 815-17 (1990)).

Crawford states that the Complainant was a well known drug dealer who operated a drug distribution business from a condominium that had been leased by his girlfriend and drug supplier, Deborah Kinney.  At trial, the condominium was

referred to as the "Hot Spot."  According to the testimony of Bernard Willis, the Complainant met with Crawford at a gas station.   Willis testified that the Complainant had asked Willis if he should do business with Crawford, but that the Complainant later told Willis that he had acquired the three kilos of cocaine to sell to Crawford.

LaTarsha Gamble, the Complainant's wife, testified that the Complainant had received a phone call in the early morning hours on Friday, December 14, 2001.  LaTarsha Gamble stated that the Complainant had asked if Crawford was ready and told Crawford that he was going to the Hot Spot.  Deborah Kinney, the Complainant's girlfriend, testified that the Complainant left the condominium later that day stating that he was going to Crawford's residence.   The next day, December 15, 2001, a group of hunters found a badly burned body, later identified as the Complainant herein, laying on a dirt road.

Crawford argues that the Complainant's alleged statement to his wife, LaTarsha Gamble, that he intended to go to the Hot Spot, would have been admissible for limited purposes to show that he had intended to meet with Crawford.  Crawford argues that LaTarsha Gamble testified that the victim said he was going to the Hot Spot because Crawford had asked him to go there.  Crawford maintains that this was a fact that the Complainant had remembered, and, therefore,

did not fall within an exception to the hearsay rule.   Crawford notes that counsel

objected to the hearsay testimony of LaTarsha Gamble concerning a phone call that

was alleged to have been placed by Crawford to the victim.   The court sustained

the objection and granted the defense a "running objection" as to the

inadmissibility of hearsay evidence.   Crawford claims that the instruction to the

jury to disregard the improper evidence and that the jury could only consider the

evidence as to the Complainant's intent did nothing to cure the error.

Crawford raised these claims on appeal.   In rejecting these claims, the

appellate court found:

> **A. Hearsay statements**
> In his first eight points of error, appellant asserts that the
> trial court erred by allowing LaTarsha, Kinney, and
> Willis to testify about hearsay statements and that this
> erroneously admitted hearsay testimony violated his right
> under the sixth amendment to the U.S. Constitution to
> confront and cross-examine the witnesses against him.
> *See* U.S. Const. amend. XI.
>
> ***1. Standard of Review***
> Whether an out-of-court statement is admissible under an
> exception to the hearsay rule is a matter within the trial
> court's discretion. *Zuliani v. State,* 97 S.W.3d 589, 595
> (Tex. Crim. App. 2003). We will reverse only if the trial
> court's decision to admit testimony is "so clearly wrong
> as to lie outside the zone within which reasonable
> persons might disagree." *Id.* A defendant's right to
> confront and cross-examine the witnesses against him
> under the U.S. Constitution's Sixth Amendment's

confrontation clause is not implicated if a hearsay statement is non-testimonial in nature and bears adequate indicia of reliability. *Woods v. State,* 152 S.W.3d 105, 113-14 (Tex. Crim. App. 2004) (citing *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354 (2004)). Statements that are testimonial in nature include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [to] police interrogation" and do not include casual remarks made spontaneously to acquaintances. *Id.* at 114 (internal quotation marks omitted). If the statement in question falls within a firmly rooted hearsay exception, reliability can be inferred and is even found to be per se reliable for Confrontation Clause analysis. *Guidy v. State,* 9 S.W.3d 133, 149 (Tex. Crim. App. 1999); *see also Crawford,* 124 S. Ct. at 1372-74 (suggesting that otherwise reliable non-testimonial hearsay falls outside scope of Sixth Amendment's Confrontation Clause).

### 2. Testimony of Latarsha Gamble

In his first point of error, appellant argues that the trial court erred in allowing LaTarsha to testify that Gamble asked appellant over the telephone, "Are you ready," and told appellant, "Let me get up from here and go over to the Hot Spot." The State argues that the question, "Are you ready?" is not a statement asserting the truth of the matter stated therein and is not hearsay. We agree. *See* TEX. R. EVID. R. 801(c); *see also Smith v. State,* 779 S.W.2d 417, 429 (Tex. Crim. App. 1989) (holding that testimony regarding question asked by police officer was not hearsay because it "merely related the content of a question"). We also agree with the State's argument that Gamble's statement that he was going to leave the home he shared with his wife and go to the condominium was a statement of intent and was admissible as an exception to the hearsay rule under rule 803(3). *See* TEX. R. EVID. 801(c); *see also Trostle v. State,* 588 S.W.2d 925, 929

(1979) (hearsay testimony admissible as explanation by deceased of plan to meet accused); *Miller v. State,* 753 S.W.2d 473, 477 (Tex. App. - Houston [1st Dist.] 1988, no pet.) (same).

We overrule appellant's first point of error.

In his third point of error, appellant argues that the trial court erred in allowing LaTarsha to testify about a statement made by appellant's mother. LaTarsha testified that she received a phone call from appellant's sister on late Sunday night or in the early hours of Monday morning, after she had been told that a body with identifiable marks similar to her husband's had been discovered, but before the body was officially identified. LaTarsha said that appellant and his mother also participated in the phone call and that, when appellant told her that he was not responsible for her husband's murder, his mother tried to "talk over" appellant, saying to him "Vashon, Vashon, we don't know who the body belongs to yet. Everybody needs to stop saying its Keiddy [Gamble] before we actually know." Appellant contends that this is hearsay because appellant's mother's statement was offered to assert the truth of the matter it asserts; namely, that the body had not, at the time of the telephone conversation, been officially identified as that of Gamble. We note, however, that other evidence, not challenged by appellant, clearly established that the body was in fact not identified until after the time LaTarsha indicated that appellant's mother made the statement. "[A] defendant who allows evidence to be introduced from one source without objection forfeits any subsequent complaints about the introduction of the same evidence from another source." *Reyes v. State,* 84 S.W.3d 633, 638 (Tex. Crim. App. 2002). Thus, even if appellant's mother's statement "was hearsay, any error was not preserved because the same substantive evidence was elsewhere introduced without objection." *See id.* (overruling issue challenging admission of hearsay